833 F.2d 1006
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dorn v. WILLIAMS, t/a Family Discount Health and Beauty
Aids, Plaintiff- Appellant,
v.
RITE AID CORPORATION, Defendant-Appellee,
v.
GREEN'S DRUGSTORES, INC., Third Party Defendant-Appellee.
 No. 87-3822.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 9, 1987.
Decided: Nov. 20, 1987.
 
 David Bonner Worthy (Stone & Worthy on brief) for appellant.
 Robert Harvey Chappell, Jr. (Craig T. Merritt; Christian, Barton, Epps, Brent & Chappell, Ebb H. Williams, III on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, K.K. HALL, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this diversity action, Dorn V. Williams appeals the district court's order granting summary judgment in favor of Rite-Aid Corporation. The district court rejected Williams' claim that Rite-Aid had tortiously conspired to interfere with a lease agreement between Williams and his tenant, Green's Drug Stores, Inc., and conspired to wilfully and maliciously injure Williams in his trade or business. We affirm.
 
 I.
 
 2
 Williams is a businessman who owned the Family Discount Health and Beauty Aids store ("Family Discount") in Stuart, Virginia. Rite-Aid is a Delaware corporation which, through its Virginia subsidiary, owns and operates drug stores throughout Virginia. Green's, Rite-Aid's alleged coconspirator, is a Virginia corporation, controlled by Charles E. Green, Jr. and Charles E. "Ted" Green, III, which operates several drug stores in Virginia.
 
 
 3
 The facts, viewed in a light most favorable to Williams, show that Williams was party to a license agreement with Green's, under which Green's leased space in Williams' store for the operation of a pharmacy ("Family Pharmacy"). Under this agreement, either party had the right to cease operations upon ninety days' notice. The lease also provided that, upon termination, Williams had the option to purchase Family Pharmacy's "fixtures and equipment." Significantly, the prescription files and inventory remained the property of Green's.[1]
 
 
 4
 In late 1982, Rite-Aid decided to open a drug store in Patrick County, Virginia, near the town of Stuart. Prior to opening the new store, Rite-Aid negotiated and executed an agreement with Green's to purchase the prescription files and inventory of Family Pharmacy.[2] On or about December 7, 1983, I. Lawrence Gelman, associate counsel for Rite-Aid, prepared a standard agreement for the sale of Green's prescription files and inventory to Rite-Aid. After Ted Green informed Gelman of the 90-day termination clause in the lease agreement, certain changes were made in the sales contract in order to harmonize the Rite-Aid agreement with the existing lease. On January 4, 1984, Gelman sent an executed sale contract to Green and reminded Green to give notice to Williams of Green's intention to terminate the lease.[3]
 
 
 5
 On January 9, 1984, a letter constituting Green's notice of termination was delivered to Williams. The next day, employees of Green's and Rite-Aid transferred the prescription files and inventory from Family Pharmacy to Rite-Aid. This operation was organized by Henry (Hank) Baxter, general manager of Green's.[4] In addition, Rite-Aid ran various advertisements, similar to those routinely generated by its advertising staff, in order to draw the public to the new store.[5] It is undisputed that Baxter initially allowed employees of Green's and Rite-Aid to display posters in Williams' store stating that Family Pharmacy had "moved" and that "all prescriptions" could be "filled at new Rite-Aid Pharmacy." Although Williams contended that Green's failed to operate the pharmacy from January 10, 1984, until January 17, 1984, the record is clear that after January 17, Green's operated Family Pharmacy until April 9, 1984, ninety days after notice of termination was given.
 
 
 6
 After Rite-Aid opened its new store, the sales at Williams' store dropped dramatically. Williams was unsuccessful in securing a replacement for the Green's Pharmacy and Family Discount Health and Beauty Aids was forced to close.
 
 
 7
 On June 9, 1986, Williams filed this action against Rite-Aid in the United States District Court, Western District of Virginia, Danville Division, alleging that Rite-Aid maliciously and unlawfully conspired with Green's to induce Green's to break its lease with Williams. Williams further charged that Rite-Aid conspired with Green's to wilfully and maliciously injure Williams in his trade or business, in violation of Va.Code Secs. 18.2-499, 18.2-500 (1982).[6] On March 13, 1987, the district court granted Rite-Aid's motion for summary judgment, concluding that there was no evidence that Rite-Aid either intended or concurred in any decision by Green's that the lease be breached, or that Rite-Aid had a malicious desire to injure Williams' business. From this decision, Williams appeals.
 
 II.
 
 8
 On appeal, Williams contends that the district court erred in granting summary judgment for Rite-Aid because there were genuine issues of material fact from which a jury could find that (1) Green's breached its lease with Williams; (2) Rite-Aid induced this breach by promising to indemnify Green's; and (3) Rite-Aid and Green's conspired to wilfully and maliciously injure Williams' business. We disagree.
 
 
 9
 Whether Green's actually breached its lease with Williams by removing its prescription files and inventory from Family Pharmacy before the ninety-day notice period is not a dispositive issue.[7] Assuming, arguendo, that Green's breached its lease with Williams by removing its prescription files and inventory, there is absolutely no evidence that Rite-Aid knew or intended a breach to occur. Indeed, the negotiations prior to executing the sale contract between Green's and Rite-Aid demonstrate a contrary conclusion. Nor is there evidence of any conspiracy between Rite-Aid and Green's. As the district court noted, the sale of Green's prescription files and inventory "was a routine business transaction which Rite-Aid had conducted in similar circumstances elsewhere."
 
 
 10
 We also find no merit in Williams' claim that Rite-Aid induced Green's to breach its lease with Williams by agreeing to reimburse Green's for its anticipated costs in extricating itself from the ninety-day notice period. See, supra n. 3. These provisions are neither improper nor unusual. Rite-Aid simply recognized that Green's might not want to bear the additional cost of a "buy out" of the notice period, or of operating its pharmacy after the sale of its prescription files and inventory. Neither of these possibilities contemplate a breach of the lease agreement with Williams.
 
 
 11
 Finally, we reject Williams' assertions that Rite-Aid violated Va.Code Secs. 18.2-499, 18.2-500 (1982). Under the statute, a plaintiff must demonstrate "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." Allen Realty Corp. v. Holbert, 318 S.E.2d 592, 596 (Va.1984). The defendant's "primary and overriding purpose" must be to injure the plaintiff in his trade or business, "motivated by hatred, spite, or ill-will...." Greenspan v. Osheroff, 351 S.E.2d 28, 35 (Va.1986). Here, the record is devoid of evidence that Rite-Aid acted out of any motivation other than to lawfully establish itself in a new market area. We hold, therefore, that the district court committed no error in finding that Rite-Aid was entitled to summary judgment as a matter of law.
 
 
 12
 The judgment is, accordingly, affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The lease provided in pertinent part that:
 (15) TERMINATION OF STORE OPERATION.
 The Licensor shall not cease to operate the store in which the licensed space is located unless it shall have first given the Licensee at least ninety days' advance notice of its intention to do so. The Licensee shall have the right to terminate this Agreement at any time by the giving of ninety days' advance notice of its intention to do so. In this event, Licensor shall have the right, privilege and option to purchase the fixtures and equipment used by Licensee in said business, at Licensee's cost less allowable depreciation at the time of purchase, and if such right, privilege or option is exercised, and the said fixtures and equipment purchased as aforesaid by the Licensor, the name "FAMILY PHARMACY", shall become the exclusive property of Licensor.
 * * *
 (18) LICENSEE'S RIGHT TO REMOVE ITS OWN PROPERTY.
 All trade fixtures and equipment, ... which are installed in, or placed upon the licensed space by the Licensee [Green's], or at its expense, with all of the Licensee's inventory and prescription files, shall remain property of the Licensee.
 
 
 [2]
 When opening a new store, it is a common practice to purchase prescription files from an existing pharmacy. This transaction is called a "pourover."
 
 
 [3]
 The preamble to the sale agreement recognized the existence of the lease and the 90-day notice requirement. In addition, Section 3 of the sale agreement stated:
 In consideration of Seller's agreement to proceed with closing of this sale on fifteen-days' notice and possibly prior to the expiration of the ninety days provided in paragraph (15) of the lease agreement with Dorn V. Williams, Rite-Aid agrees to reimburse Seller for any amounts not exceeding $3,171.00 that Seller shall have to pay Williams for rent from the inventory date until end of the term of the lease agreement or for other consideration required to terminate the lease agreement, not to exceed $3,171.00 in total.
 Upon execution of this agreement, Seller immediately will give Dorn V. Williams notification of its intent to terminate the lease agreement, and Seller will use its best efforts to negotiate a reasonable settlement with Williams for rent for any period between delivery of possession hereunder and end of the term of the lease agreement or for other consideration required to terminate the lease agreement.
 
 
 [4]
 Rite-Aid had also hired the pharmacist and pharmacist's assistant from Green's
 
 
 [5]
 The following was broadcast on the local radio station:
 The new Rite-Aid Pharmacy in the Village Shopping Center has merged with Family Pharmacy of Stuart. All Family Pharmacy prescriptions are filled at Rite-Aid and all of their files are now in the Rite-Aid Pharmacy. Call 694-4034 or come see our new store. Pharmacist Ralph Larsen and Technician Paula Fain, formerly of Family Pharmacy, will be there to serve you, and be watching for our grand opening coming the week of January 23rd. The new Rite-Aid Pharmacy in the Village Shopping Center, Stuart.
 
 
 [6]
 On July 31, 1986, Rite-Aid filed a third-party complaint against Green's, premised on an indemnification clause in the sale agreement, which is not a part of this appeal
 
 
 [7]
 The district court found that the language of the ninety-day notice period was vague, creating a question whether a breach had occurred. The district court correctly concluded that it was not necessary to decide this issue